# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DOUGLAS JAMES HASNER | ) | |
| 32457 COUNTY ROUTE 179 | ) | |
| DEPAULVILLE, NY 13632 | ) | |
| | ) | |
| Plaintiff, | ) | CASE #: _____ |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA. | ) | |
| | ) | |

## COMPLAINT

COMES NOW, Plaintiff Douglas James Hasner ("Mr. Hasner" or "Plaintiff"), by and through his undersigned Counsel and brings this Complaint against the UNITED STATES OF AMERICA ("United States" or "Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671-2680 and 28 U.S.C. § 1346(b)(1).

Mr. Hasner alleges as follows:

## INTRODUCTION

This case is filed to seek redress for the unlawful, egregious, senseless use of excessive force and public mistreatment and Tazing of Mr. Hasner, and his subsequent malicious prosecution by sworn law enforcement officers employed by the United States Park Police acing under color of law on behalf of the United States of America, on April 9, 2018, within the District of Columbia.

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 and 28 U.S.C. § 1346(b)(1), 18 U.S. Code Section 242.

2. This Court has subject matter jurisdiction over claims within this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202.

3.    This Court also has exclusive jurisdiction over the FTCA claims in this action pursuant to 28 U.S.C. § 1346(b) because Plaintiff alleges tort claims against the United States for the acts of its employees. The precise claims at issue are "claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1).

4.    Venue properly lies in this Court pursuant to 28 U.S.C. §1391 because all material events occurred in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.    On January 30, 2019, pursuant to 28 U.S.C. § 2675(a), Plaintiff presented written notice, specifically a completed Standard Form 95 together with an addendum and pertinent supportive documents, of his FTCA administrative tort claim to the appropriate federal agencies, the Department of the Interior ("DOI"), and the United States Park Police, through Plaintiff's legal representative. *See* Attached Exhibit A (Delivery Confirmation); Exhibit B (SF 95 Claim).

6.    An Attorney-Advisor in the Department of the Interior's Office of the Solicitor provided written notice confirming receipt of Plaintiff's administrative claim on March 26, 2019.

7.    On September 12, 2019, the Department of the Interior denied the claim.  The denial, which is attached hereto as Composite Exhibit C, further stated in relevant part that "If you are dissatisfied with this determination, you may submit to this office a written request for reconsideration within six months after the date of mailing of this letter, or you may, within that same period of time, file suit in an appropriate United States District Court."  Mr. Hasner has thus

exhausted their administrative remedies for purposes of their claims under the FTCA. *See* 28 U.S.C. §§ 2675, 1346. See Attached Exhibit C.

8.   Consistent with 28 U.S.C. § 2401(b), Plaintiff is filing and commencing this action within six months of the government's denial of his claim.

## THE PARTIES

9.   Plaintiff Douglas Hasner ("Mr. Hasner") has at all times material to events complained of herein, been a legal resident of the State of New York.

10. Defendant, the UNITED STATES of AMERICA, is sued under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 and 28 U.S.C. § 1346, for the tortious acts of its employees.

## RELEVANT FACTS COMMON TO ALL COUNTS

**A. Mr. Hasner is a hard-working man who has served his state, his country and his community for over 30 years.**

11.   Mr. Hasner was born and raised in the small town of Cape Vincent, New York.

12.   In this rural area of New York, he was always around farm machinery and big trucks. His first experience with heavy equipment was at the age of 10 years old driving a farm tractor, and has been "hooked" on all things pertaining to heavy equipment including over the road trucks ever since.

13.   At the age of 18, he enlisted in the Army Reserve as a combat medic.

14.   When he turned 21, he went to work for the New York State Corrections Department where he made a career for 25 years. When he became eligible for retirement, he decided to get his Commercial Driver's License ("CDL") and go over the road driving tractor trailers.

16.     In his second career, he has gone from company driver with a mega carrier to an owner operator.

17.     He owns an excavator and a 10-ton dump truck, and when not on the road he can often be found helping his neighbors with various projects.

18.     He served as a volunteer fire fighter, EMT, and diver on our local dive/water rescue team for many years.

19.     He has a firm sense of community involvement and wishes to serve the trucking community in similar fashion as he has his own home town.

20.     Mr. Hasner went on to co-found and serves as Director of Human Resources & Internet Technology, for the United States Transportation Alliance ("USTA"), a trucker's trade organization organized to oppose government over-regulation in the transportation industry.  See: https://www.ustransportationalliance.org  (link checked 3/5/2020)

**B. At the time of the incident in this case, Mr. Hasner was in Washington serving the community of truckers seeking better working conditions for long haul drivers.**

21.     On April 9, 2018, in his role and on behalf of drivers in the trucking industry, Mr. Hasner came to the District of Columbia to participate in a planned rally, meetings and lobbying of the management of the Federal Motor Carrier Safety Administration ("FMCSA") and Congressmen about a proposed Federal mandate for truckers to use electronic time logging devices (ELD) and for the truckers to demonstrate the need for flexibility in proposed new drivers' hours of service limitations.

22.     Mr. Hasner had driven his own Jeep from New York to Washington for that purpose.

23.     It was at the height of the Cherry Blossom festival in Washington, so parking was at a premium.   That morning, a large number of participating truckers parked their vehicles

along Constitution Avenue between the White House and the Washington monument, near the site of the rally.

24.     On that particular day, a large and diverse presence of law enforcement agencies (including U.S. Park Police, Metropolitan Police Department officers, and Secret Service) were monitoring the streets and park areas along Constitution Ave. The drivers approached the first law enforcement officers they encountered that morning and inquired if they would be ticketed for parking there and were told by Metropolitan police officers that they would <u>not</u> be ticketed and could stay parked there until 2:00pm and after 2:00 pm they would have to do something differently, and the signage on Constitution Ave also confirmed "<u>no parking after 2:00 PM</u>".  For several hours, the truckers' and other vehicles were not disturbed.

25.     Around noon, Mr. Hasner was in a Congressional Office Building, in a meeting with a North Dakota Congressman and other trucker representatives discussing the pending legislation and how it would affect the drivers.

26.     The meeting was cut short when a message came in to rally participants, including Mr. Hasner, saying that, after what appeared to have been a shift change among law enforcement, citations were being suddenly being handed out to vehicles parked at the scene of the outside demonstration, along with threats of towing. It should be noted that this was prior to the 2:00 pm deadline posted and previously agreed upon.

**C.     Mr. Hasner Returns to His Parked Vehicle**

27.     Mr. Hasner and his colleagues broke off the meeting, got in a cab back toward the scene, and when they got there, indeed found the police writing tickets.

28.     Upon approaching his Jeep, Mr. Hasner found a parking ticket on the windshield of his jeep and was notified by an MPD officer that he would **also** be getting a $500 fine,

because the printed coating on his Jeep's New York license plate was peeling, and that was illegal.

29.    Mr. Hasner asked the ticketing officer if he could swap the front plate (which was undamaged) and rear plate if that would help remedy the situation.

30.    The MPD officer responded, "Yes, you can but you're still going to get a fine."

31.    At that point, Mr. Hasner proceeded **to** change the plate, and retrieved a small multi-tool he remembered he had in the jeep

32.    He then attempted to use the small screwdriver contained within the multi-tool  to try to loosen the screws of the rear license plate, but to no avail as the screwdriver contained within the multi-tool was too small to grip the large screws the held the plate.

33.    At that moment, U.S. Park Police Sergeant Kristopher Swope approached Mr. Hasner.

34.    From out of nowhere, Sergeant Swope told him to "stop."

35.    Mr. Hasner said, "For what? This screwdriver is too small I need a bigger one anyway."

36.    Mr. Hasner then tried to demonstrate that the small screwdriver would not turn the screws.

**D.  A Parking Ticket Turns into a Melee**

37.    Without any provocation from Mr. Hasner, and without further notice and no warning, the Sergeant immediately grabbed Mr. Hasner's left hand and began to apply a wrist lock.

Case 1:20-cv-00692-TNM   Document 1   Filed 03/10/20   Page 7 of 34


38.     Startled at the situation, Mr. Hasner pulled his hand away from the officer and said, "Sergeant you have no right to touch me. I have done nothing to warrant the use of force in this situation."[1]

39.     This dialogue seemed to enrage the Sergeant, who then more forcefully and with even greater swiftness grabbed Mr. Hasner's left hand and attempted to apply yet another wrist lock.

40.     Sergeant Swope held on and did not break his grip.

41.     Mr. Hasner then allowed the officer to hold his hand in place without any resistance, and Mr. Hasner still held the screwdriver tool in his hand at this time, out of sight to most of those present.

42.     Then, without any further provocation, notice or warning, and although standing right next to Mr. Hasner, the Sergeant holding his hand then said in a very loud voice apparently designed to alert the crowd of officers around him, "*drop the weapon.*"  this also attracted the attention of other Park Police officers in the immediate area.

43.     There was of course no "weapon."

44.     Mr. Hasner immediately realized that in saying "weapon," the Sergeant could only be referring to the screwdriver.

45.     Mr. Hasner was at most using the screwdriver tool for what it was, a "tool" to take the license plate off the vehicle so he could swap the plates.

46.     The Sergeant, who had already seen him removing the plate using that tool for that purpose, certainly knew what and why he had the tool in his hand.

---

[1].     Mr. Hasner in fact quickly explained to the officer that he was retired from the New York State Corrections system and had in the past conducted and attended training on "The Use of Force" to Corrections Officers for more than ten years.

47.    At no time did Mr. Hasner make any gesture, effort or succeed in any attempt to use the screwdriver tool as a "weapon."

48.    Mr. Hasner instantly complied with the command to "drop the weapon" by opening his hand, at which time the Sergeant physically removed the screwdriver tool from Mr. Hasner's left hand and took possession of it.

49.    Despite the Sergeant having taken full and complete control of the tool, and Mr. Hasner no longer having control, Swope inexplicably and apparently deliberately incited the crowd of law enforcement officers by again yelling loudly "drop the weapon."

50.    Mr. Hasner knew that the surrounding officers could not see his hand as it was out of view and being held by Sgt. K. Swope who falsely informed them of a "weapon" in his possession.  More likely than not, that prompted a belief among the other officers that deadly physical force could be reasonably be used by any officer present.  Now desperate to show everyone that he had relinquished the weapon and was not a threat in spite of the officer's misdirection and false shout, Mr. Hasner again pulled his hand from the Sergeant's grip, this time publicly opening the palm of his hand and put his hand palm down fingers spread wide upon the spare tire mounted to the rear of the Jeep so it was in view of all present.

51.    He thus showed everyone that he had no "weapon," and to reinforce the point, Mr. Hasner himself then yelled out "I have no weapon."

52.    Undeterred by his own knowledge that Mr. Hasner's with absolute certainty lacked a weapon or by Mr. Hasner's very public claim and show of innocence, Sgt. Swope again firmly grabbed Mr. Hasner's left arm.

53.    At the same time, U.S. Park Police Officer Volchansky, firmly grabbed his right arm.

8

54.     At this point, Mr. Hasner began to be pulled in a "tug of war" by Swope on his left who was pulling him left toward the Jeep, and Volchansky on his right who was pulling him to the right in the opposite direction.

55.     Mr. Hasner at this point was still standing, but their actions began to put him off-balance.

56.     Feeling helpless, Mr. Hasner at that point tried to regain his balance on his own.

57.     Volchansky then said to the Sergeant, "I'll do a leg sweep."

58.     Mr Hasner's thought at the time was he welcomed a leg sweep so he could go down with the sweep and not have to worry about getting shot.

59.     The so-called "leg sweep" was performed *incorrectly* in a way that caused Mr. Hasner's leg to lock in place in an upright position, rather than causing him to fall as apparently intended. [A proper leg sweep is performed by kicking the rear of the subjects knee causing it to collapse. Officer Volchansky performed it by placing his leg in front of Mr Hasner's knee causing it to lock in place.]

`   **E.     An Unjustified Threat to Use a Taser is Made by Defendant**

60.     At that point, with no reasonable basis for doing so, Swope announced that he intended to use a Taser on Mr. Hasner.

61.     Mr. Hasner responded, asking why he needed to be "tased."

62.     The Sergeant did not respond.  Then, an Officer in front of Mr. Hasner grabbed his left hand which was still resting on the spare tire and held onto it.

63.     At that point, the group of police officers had full and complete control of Mr. Hasner, and he was not resisting.

64.     The officers then in unison began to pull him away from the vehicle, then pushed him very abruptly to his right away from them.

65.     They were apparently trying to make it look as if he was trying to pull away from them and run away when at the time, though the truth was that he was totally off balance and unable to control his lateral movements.

66.     In a final lunge, the officers literally pushed him ahead of them.

**F.     Mr. Hasner is Tasered for 24 Seconds**

67.     As they did so, Sergeant Swope, who had already grabbed a Taser, aimed it directly at the middle of Mr. Hasner's back while he was still in motion from being pushed.

68.     Sgt. Swope then fired several bursts from the weapon consecutively for a total of 24 seconds (all of which is captured on a video).

69.     Mr. Hasner, severely stunned by the Taser, fell uncontrollably and forcefully face down onto the concrete sidewalk.

70.     Mr. Hasner then lay on the sidewalk screaming, his body involuntarily jerking and writhing over and over again, from the effects of the multiple, long blasts from the Taser.

71.     Through the above incident, dozens of spectators, both other truckers that he knew, and members of the general public that he did not know, witnessed the entire event.

**G.     Mr. Hasner is Falsely Arrested, Falsely Imprisoned, and Maliciously Prosecuted**

72.      After this terror-inducing experience of negligence, excessive force, assault, battery, and assault with a dangerous weapon, the Park Policefurther abused the process when they caused Mr. Hasner to be falsely arrested, falsely imprisoned, and maliciously prosecuted, all without a warrant or probable cause.

73.     He was driven to U.S. Park Service headquarters in D.C. and charged with "resisting arrest", "failure to obey an officer" and "attempted tampering with physical evidence".

74.      He was given a notice to appear at DC Superior Court approximately 30 days later.

75.     He was held there for four hours, and then released in a neighborhood of Washington DC with which he was unfamiliar, and he then had to walk over two miles back to where he was arrested.

76.     The summons caused him the expense of having to return to Washington DC from his home in Upstate New York and to suspend the operation of his trucking business (and his income) for several days in order to do so.

77.     After maliciously prosecuting Mr. Hasner and leaving him with a criminal record for crimes that he did not commit, the malicious prosecution terminated in Mr. Hasner's favor when the charges were dismissed and disposed of with a formal "Nolle Prosequi."

78.     Still the bad publicity he received, the criminal charges and the court appearance further defamed and humiliated him publicly, and has affected his standing in the community and his reputation and business success.

79.     As a result of this incident, Mr. Hasner has suffered, and continues to suffer, emotional distress, economic and non-economic damages, and physical stress.

80.     To this day, Mr. Hasner has a criminal record, solely as a result of this incident.

**H. Park Police abused their power to oppress Mr. Hasner under color of federal/state law.**

81.     Swope's' actions in particular were outrageous, malicious and beyond the bounds of decency.

11

82.     Those acts were a foreseeable cause of the damages and injuries sustained by Mr. Hasner, and subjected Mr. Hasner to even more significant risk of serious injury or death.

83.     At all times relevant hereto, Park Police subjected Mr. Hasner to the deprivation of his constitutional and statutory rights with actual or implied malice, in an unreasonable and unnecessary fashion.

84.     The Park Police acts shocked the conscience and amount to an inhumane abuse of power, thereby subjecting Mr. Hasner to a deprivation of his constitutional rights and privileges.

85.     At all times relevant hereto, Park Police acted without legal justification or excuse.

86.     At all times relevant hereto,  acted with an evil and rancorous motive, influenced by detestation, the purpose being to deliberately and willfully injure Mr. Hasner.

87.     At all times relevant hereto, Park Police acted deliberately, with ill will, improper motive, and actual malice.

88.     At all times relevant hereto, Park Police acted under color and pretense of law, and under color of statutes, customs, and usages of the United States Government and the U.S. Park Police.

89.     At all times relevant hereto, Park Police acted within the scope of their employment.

90.     U.S. Park Police including unnamed officers, committed each of the acts knowingly, intentionally, and maliciously.

91.     In the alternative, at all times relevant hereto, the Park Police acted with negligence and/or gross negligence in violation of the lawful duties owed Mr. Hasner.

92.     At no time did Mr. Hasner cause or contribute to his injuries.

93.     As a direct and proximate result of the aforesaid conduct, actions, and inactions of

the Park Police, as well as those stated elsewhere herein, Mr. Hasner was caused to suffer

and continues to suffer undue emotional distress, humiliation, embarrassment, loss of

respect, loss of society, shame, and loss of enjoyment of life.  Mr. Hasner relives this incident

several times a day causing him great and continuing stress.

94.     Mr. Hasner was caused to suffer and continues to suffer from economic damages,

including, but not limited to, lost time and wages from work, lost earning capacity, and medical

bills, all to his great detriment.

95.     As a direct and proximate result of Park Police unconstitutional acts, Mr. Hasner

suffered humiliation and extreme mental and post-traumatic emotional distress.

96.     As a further proximate result of Park Police unconstitutional acts, Mr. Hasner incurred

expenses and lost income as a result of his inability to transact his usual business in dealing with

this matter.

97.      Plaintiff further alleges that all of his injuries, losses and damages claimed in this suit

– past, present, and prospective – were caused solely by the actions of Park Police, as set forth

above, without any negligence, want of due care, or provocation on the part of plaintiff, either

directly or indirectly.

98.     18 U.S.C. § 242. Section 242 provides in relevant part: "Whoever, under color of any

law, …willfully subjects any person…to the deprivation of any rights, privileges, or immunities

secured or protected by the Constitution or laws of the United States [shall be guilty of a crime]."


### CLAIM FOR RELIEF I
### Unlawful Seizure and Detention
### Against Defendant United States under the FTCA

99.     This Claim for Relief realleges and incorporates by reference each of the previous

paragraphs.

100.    Plaintiff had a firmly established right under the Fourth Amendment to be free from unreasonable seizure and detention.

101.    A detention without reasonable suspicion that a citizen has committed a crime violates the Fourth Amendment prohibition on unreasonable searches and seizure.

102.    A police officer may stop and briefly detain a citizen based on a reasonable suspicion of involvement in a crime.

103.    Plaintiff had committed no criminal offense when Sgt. Swope initiated the seizure.

104.    Sergeant Swope knew that there was no basis for a seizure.

105.    Park Police acted unreasonably in seizing the plaintiff and subjecting him to

106.    detention and to a prolonged investigatory and false arrest detention.

107.    As a result of Park Police' actions Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, loss of respect, loss of society, shame, loss of enjoyment of life, flashbacks, continuing stress, and extreme mental and post-traumatic emotional distress..

108.    As a direct and proximate result of Park Police' unconstitutional acts, Mr

109.    Mr. Hasner was caused to suffer and continues to suffer from economic damages, including, but not limited to, lost time and wages from work, lost earning capacity, and medical bills, all to his detriment.

110.    As a result of Park Police' actions, Plaintiff suffered damages in the amount to be proven at trial.

**CLAIM FOR RELIEF II**
**Excessive Force**
**Against Defendant United States under the FTCA**

111.    This Claim for Relief realleges and incorporates by reference each of the previous paragraphs.

112.    Plaintiff had a firmly established right under the Fourth Amendment to be free from unreasonable seizure and excessive force.

113.    Park Police Swope and Volchansky, along with John Doe 1-3, did intentionally and unlawfully use excessive force against the Plaintiff unnecessarily and without cause.

114.    Excessive force included unnecessary and unreasonable manhandling, pushing, shoving, and striking the plaintiff with a Taser in multiple, consecutive, continuous bursts, lasting a total of approximately 24 seconds.

115.    No reasonable officer under the circumstances would have used the amount of force that was used by the Park Police.

116.    The force used by Park Police was unreasonable and excessive under the circumstances.

117.    As a result of Park Police actions, the plaintiff suffered damages, including mental anguish, pain, and physical injuries.

**CLAIM FOR RELIEF III**
**Assault**
**Against Defendant United States of America under the FTCA**

118.    This Claim for Relief realleges and incorporates by reference each of the previous paragraphs.

119.    Under D.C. Code 22-404, it is a crime in the District of Columbia to unlawfully assault, or threaten another in a menacing manner.

120.     Park Police Swope and Volchansky intentionally and unlawfully threatened or attempted to cause physical harm or offensive contact with Mr. Hasner and intentionally caused an apprehension of imminent physical harm or offensive contact with him.

121.     Sergeant Swope, who made the threat or attempt, had the present ability to carry out the harmful or offensive contact.

122.     Park Police Swope and Volchansky's actions caused Plaintiff Hasner to put in apprehension of imminent battery.

123.     The assault took the form of words, acts, and actual unconsented physical contact, which was menacing, offensive and violent.

124.     Sergeant Swope, did unlawfully assault Mr. Hasner in a menacing manner by demonstrating both intent and capability to deploy the Taser in his back in multiple consecutive bursts, an act that subjected Mr. Hasner to serious bodily harm or even death.

125.      Park Police Swope and Volchansky acted with intent to do bodily harm to Plaintiff Hasner and their conduct was perpetrated with actual malice.

126.     As a direct and proximate result of Park Police Swope and Volchansky's conduct and actions, Plaintiff suffered damages in the amount to be proven at trial.

**CLAIM FOR RELIEF IV**
**False Arrest/False Imprisonment**
**Against Defendant United States of America under the FTCA**

127.     This Claim for Relief realleges and incorporates by reference each of the previous paragraphs in this complaint.

128.     Park Police Swope and Volchansky, and Does 1-3 arrested Mr. Hasner without a warrant.

129.    Park Police detained and restrained Mr. Hasner against his will.

130.    The arrest and detention were unlawful, because the arresting officer was not justified in ordering the arrest of the plaintiff.

131.    Mr. Douglas Hasner, he was doing nothing unlawful.

132.    He was told to move his vehicle, which he was preparing to do.

133.    With the permission of another police officer, he was removing an illegible license plate on the rear of his vehicle to swap it for the legible plate on the front.

134.    Officers told him to move his vehicle which he was intending to do and that his license plate was not secure on the front of the vehicle

135.    Events escalated quickly and Mr. Hasner went from attempting adjust his license plate correctly on his vehicle to his hands behind his back and being tased.   Mr. Hasner was arrested as a result of this incident but those charges against Mr. Hasner were dismissed on May 29, 2018.

136.    As a result of Park Police actions, the plaintiff suffered damages, including mental anguish, pain and suffering, and physical injuries.

**CLAIM FOR RELIEF V**
**Malicious Prosecution**
**Against Defendant United States of America Under the FTCA**

137.    Plaintiff adopts and incorporates by reference each and every allegation contained in the forgoing paragraphs verbatim with the same effect as if herein fully set forth.

138.    Park Police initiated and continued a criminal proceeding against plaintiff without proper justification.

139.    The criminal case terminated in favor of plaintiff.

17

140.     There was no probable cause for plaintiff's arrest, detention, or the criminal case against him.

141.     The prosecution of plaintiff in the criminal case was undertaken with malice and/or a purpose other than bringing plaintiff to justice.

142.     Park Police caused the criminal prosecution of plaintiff by falsely asserting that she had committed various crimes, which Park Police knew that plaintiff had not committed.

143.     Park Police actions constituted malicious prosecution.

144.     Park Police aforesaid acts were undertaken deliberately.

145.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Park Police, as well as those stated elsewhere herein, plaintiff was caused to suffer and continues to suffer the mental, emotional, and economic damages described above in the amount to be proven at trial.

**CLAIM FOR RELIEF VI**
**Abuse of Process**
**Against Defendant United States of America Under the FTCA**

146.     Plaintiff adopts and incorporates by reference each and every allegation contained in the forgoing paragraphs verbatim with the same effect as if herein fully set forth.

147.     Sergeant Swope arrested Mr. Hasner without a warrant or probable cause, causing him to be detained for several hours and have to attend court a month later, traveling from New York to D.C. to do so.

148.     Sgt. Swope intentionally used this legal procedure for ulterior or improper purposes that procedure was not designed to achieve];

149.     Mr. Hasner was harmed by Swope's actions.

150.     Sgt. Swope's conduct was a substantial factor in causing Mr. Hasner's harm.

18

151.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Park Police, as well as those stated elsewhere herein, plaintiff was caused to suffer and continues to suffer the mental, emotional, and economic damages described above in the amount to be proven at trial.

## CLAIM FOR RELIEF VII
### Negligence
### Against Defendant United States of America Under the FTCA

152.     Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference.

153.     Park Police had a duty to Plaintiff to act with ordinary care and prudence so as not to cause harm or injury to another.

154.     By engaging in the acts alleged herein, Swope, Volchansky and Does 1-3 failed to act with ordinary care and breached their duty of care owed to Plaintiff in the use of the Taser.

155.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Park Police, as well as those stated elsewhere herein, plaintiff was caused to suffer and continues to suffer the mental, emotional, and economic damages described above in the amount to be proven at trial.

## CLAIM FOR RELIEF VIII
### Infliction of Emotional Distress
### Against Defendant United States of America Under the FTCA

156.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

157.     By engaging in the acts alleged herein, Swope, Volchansky and Does 1-3 engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiff to suffer emotional distress.

158.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the Park Police, as well as those stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer the mental, emotional, and economic damages described above in the amount to be proven at trial.

159.    The conduct of Park Police also amounts to oppression, fraud and malice.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Mr. Hasner respectfully requests that the Court enter a judgment against Defendant for the actions of the Park Police:

A.  Pain, including physical pain suffered during and after the incident in this case, in an amount to be determined at trial;

B.  Costs of medical bills, psychological counseling, and related expenses in an amount to be determined at trial;

C.  Damages for mental anguish and emotional distress, including fear, nervousness, anxiety, worry, mortification, shock, indignity, apprehension, terror, public humiliation, reputational damage, sleeplessness, loss of enjoyment of life, disparagement and depression in an amount to be determined at trial;

D.  Economic losses for lost profit for the time and jobs that Mr. Hasner has lost and will continue to lose as a self-employed trucker through damage to his reputation and goodwill from this incident, including direct costs and related costs of inconvenience, in an amount to be determined at trial;

E.  Loss of consortium with his spouse, in an amount to be determined at trial;

F.  Any and all other damages suffered by Mr. Hasner for pain and suffering in an amount to be determined at trial;

G.  Litigation expenses associated with this action, including court costs, deposition costs, expert witness fees, investigatory costs, service, and related costs, as allowed by law, in an amount to be determined at trial;

F.  Post-judgment interest at the lawful rate; and,

G.  Any further relief that this court deems just and proper, and any other appropriate relief available at law and equity.

Plaintiff has timely complied with the pre-lawsuit provisions of 28 U.S.C. 2075 of the Federal Tort Claims Act. The United States Park Police, and the Department of Interior, were duly notified of those claims as provided by law, and have denied the claims described herein.

Whereby, Plaintiff hereby requests damages in the amount of **one million dollars**, plus costs of this suit, not including attorney fees.  This is consistent with amount requested in the administrative claims to the government.

Respectfully submitted this 10th day of March, 2020.

Respectfully submitted,

/S/

_____
John F. Karl, Jr.
Counsel for Mr. Hasner
Bar Number 292458
McDonald & Karl
1025 Connecticut Avenue, NW
Washington, DC 20006-2501
Phone:  202-293-3200
Email: jfklaw@igc.org

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Douglas J. Hasner<br>32457 County Road<br>Route 179, DePauville, NY 13632 | United States of America |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Jefferson__<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Dist. of Columb__<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>McDonald & Karl<br>1025 Connecticut Avenue, NW<br>Washington, DC 20006-2501 | ATTORNEYS (IF KNOWN)<br>John F. Karl, Jr. |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)          OR          ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

Other Statutes
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☒ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Federal Tort Claims Act: 28 U.S.C. §§ 2671–2680 and 28 U.S.C. § 1346(b)(1), 18 U.S. Code Section 242.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** 1,000,000<br>**JURY DEMAND:** | Check **YES** only if demanded in complaint<br>YES ☐    NO ☒ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | *(See instruction)* | YES ☐    NO ☐ | If yes, please complete related case form |

**DATE:** _03/10/2020_    **SIGNATURE OF ATTORNEY OF RECORD** _____ /S/    John F. Karl, Jr.

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

   The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Exhibit A

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>x M. Wright    ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery<br>2 - Marion Wright    2-11-19 |
| 1. Article Addressed to:<br><br>**Chief Robert MacLean**<br>U.S. Park Police Headquarters<br>1100 Ohio Drive SW<br>Washington, DC 20242 | D. Is delivery address different from item 1?  ☐ Yes<br>   If YES, enter delivery address below:  ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 2770 6351 6699 07 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☒ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery    ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☒ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7018 3090 0000 9260 3532 | |

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

# Exhibit B

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Chief Robert MacLean<br>U.S. Park Police Headquarters<br>1100 Ohio Dr SW<br>Washington, DC 20242 | Mr. Douglas J. Hasner<br>32457 County Route 179<br>Depaulville, New York 13632<br>(See continuation, enclosed for Personal Representative |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 01/01/1969 | Married | 04/09/2018 | Monday | 2:45 (P.M.) |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

On April 9, 2018, Mr. Douglas Hasner was visiting Washington, DC.  He parked his privately owned Jeep on Constitution Avenue between the Washington Monument and the White House.  At about 2:15, Claimant returned to the Jeep and found a ticket on the windshield written by a DC MPD Parking Enforcement Officer (name unknown). At that time, Sergeant K. Swope (Badge 906), US Park Police, approached Claimant and asked him if he was going to move his car, to which Mr. Hasner replied in the affirmative. Before he could do so though, Sergeant Swope made an observation that the Jeep had a NY plate on the back that was partially illegible due to peeling paint.  (See Supplement to SF95. Enclosed)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

As a result of the unlawful treatment of Mr. Hasner, he suffered severe, substantial and continuing emotional distress and, potentially lasting psychological harm, plus giving him a criminal record, and putting a blot on his good name and personal reputation both among colleagues and in online social media where he has been shamed and embarrassed.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Justin Scribner 580-748-1493 | 209 Center St., Alva, OK 73717 |
| Arline Bennet 740-962-6785 | |
| Tim Siedschleg 605-290-4514 | 7242 95th Ave, Berlin, ND 58415 |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 0.00 | 0.00 | 1,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|---|
| *[signature]* | Pat Cresta-Savage, Esq. Attorney for Mr. Hasner | 240-260-4100 | 01/30/2019 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**Continuation Sheet for Block 2**


**Address of Personal Representative:**

**Patricia Ann Cresta-Savage, Esq.**
**Attorney for Mr. Hasner**
**Law Office of Pat Cresta-Savage, Esq.**
**2138 Priest Bridge Court, Ste. 4**
**Crofton, MD 21114**

**Office Phone: 240-260-4100**
**Email: pat@pcslaw.net**

**Block 8: Basis of Claim**

…An MPD police officer then intervened and informed Claimant that he that he was not to go anywhere and that he (would receive a ticket for the illegible plate) to which Claimant stated that he understood. Claimant then asked the MPD Officer if he could exchange the front plate for the rear plate so as not to get anymore tickets while in Washington DC, to which the MPD Officer stated "yes but you are still getting a ticket." At this point the MPD Officer left the location to retrieve his ticket-writing materials from his car.

Then, Claimant retrieved a "Gerber" multi-purpose tool (See Exhibit 1) which includes a screwdriver, with the intent to unscrew and switch the illegible plate for the legible one on the front of the Jeep in order to be able to travel "legally" for the rest of his stay while in Washington DC. At no time up to this point was Claimant told that he could not exchange the plates. As the claimant was attempting to remove the rear plate Sgt Swope approached Complainant and told him to stop what he was doing Mr. Hasner then attempted to demonstrate to SGT Swope that the screwdriver he had was too small to remove the screws holding the license plate by placing the tiny screwdriver next to the large screw to be removed, and for some reason unknown to Mr. Hasner, Sgt Swope Grabbed Mr. Hasners' left wrist and attempted to place it behind his back. Mr. Hasner then retrieved his hand from Sgt Swope and told Sgt. Swope that he was retired from 25 years in the New York State Corrections Department and had taught use of force for 10 of those years and that no conditions had been met for the justification of any use of force. Sgt Swope then again grabbed Mr. Hasners' Left wrist and placed behind his back and yelled "drop the weapon" Mr. Hasner released his grasp on the tool and Sgt Swope then retrieved the tool from Mr. Hasners' left Hand. Sgt. Swope then yelled once again "Drop the weapon" fully knowing that Mr. Hasner no longer had the tool in his possession.

Mr. Hasner knowing the gravity of the situation as there were many armed officers around him who could not know that Mr. Hasner no longer had the tool in his possession, as his hand was concealed behind his back out of their view, and had only heard the exclamation of "drop the weapon" would have had no idea what kind of weapon was involved would be readily capable of using deadly physical force to contain the situation. Mr Hasner in an attempt to de-escalate the situation, retrieved his hand from Sgt. Swope held it up palm open fingers spread and yelled "I have no weapon!" Mr. Hasner then placed his hand palm down fingers spread upon the spare tire mounted to the rear of the jeep so as to keep it in view of all the Officers present. At the same time U.S Park Police Officer Volchansky, standing close by, was also attempting to restrain Mr. Hasners' right hand.


Mr. Hasner did not attempt or complete any aggression or assault or strike of any kind toward the officers, and in fact his actions were only intended to pull away from the Sergeant enough so the other officers could see everything and know he was not armed.

At this point, Mr. Hasner was being pulled in a "tug of war" by the Sergeant on his left who was pulling him to the car and the officer on his right who was trying to pull him in the opposite direction, by their uncoordinated actions putting Mr. Hasner off-balance. Mr. Hasner only responded by trying to regain his balance.

U.S Park Police Officer Volchansky on Mr. Hasner's right said to the Sergeant, "I'll do a leg sweep." The so-called "sweep" was not done correctly because it should have been done to cause Mr. Hasner's knee to buckle; instead, it was performed in a way that locked Mr. Hasner's leg in place in an upright position, making it impossible for Mr. Hasner to comply with any commands.

At that point, while they were still near the car, the Sergeant announced that he intended to use a taser on Mr. Hasner. Mr. Hasner responded verbally by asking why he needed to be "tased." The Officer did not respond, and then the Officer in front of Mr. Hasner grabbed Mr. Hasner's left hand which at that point was still on the spare tire.

By then the police still had full control of Mr. Hasner near the Jeep, but were pulling him away from the vehicle and at the same time pushing him very fast. Mr. Hasner, knowing by now that the taser was probably impending, and seeking to ward off the use of the taser, tried to put his hands behind his back. He was still off balance at that point in time as the officers were pushing him even faster, apparently trying to make it look as if he pulled away from them and was running away when in fact nothing could be further from the truth. It was clear to him that the police had not only several officers, but guns, tasers and other means to stop someone running away, and so knew that that trying to flee from the taser would be not only hopeless but a true chargeable offense.

In a final lunge, the officers literally pushed him ahead of them. As they did so, Officer Swope who had already pulled out a Taser and stuck it near the middle of the Complainant's back as Mr. Hasner was in motion being pushed. Sgt. Swope then fired the weapon continuously for 24 seconds, all of which is captured on a video. Mr. Hasner, severely stunned by the laser, fell uncontrollably and forcefully to the concrete sidewalk, face down. Mr. Hasner then lay on the ground screaming, his body jerking and writhing, over and over again, still suffering from the effects of the Taser.

To literally add insult to injury, the officers then arrested Mr. Hasner on trumped up charges of failing to obey, resisting arrest and tampering with evidence. He was carted off to the station with a trial date scheduled for May 9, 2018 in DC Superior Court.

The officers actions, individually and collectively, while in uniform, constituted a plethora of wrongs by using more force than necessary, issuing false orders to obey after the alleged but unreal danger (the tool that had been dropped) was over, falsely arresting him, falsely imprisoning him (in the police car and at the station), failing to render aid after tasering him, falsely creating a ruse that he was failing to obey and resisting arrest when neither was true. They used excessive force in unnecessarily grabbing and manhandling, pushing and then tasing Mr. Hasner for no reason and for an unreasonable amount of time. He was, just before the time they escalated the interaction trying to be cooperative and prove he was unarmed; he had already "unarmed" himself from the screwdriver tool by relinquishing the tool to Sgt. Swope, and was not resisting when he was pushed and tazed, then held down on the cold, hard sidewalk in 43 degree weather.

SUMMARY

During that fateful day that Mr. Hasner was engaged by the US Park Police officers, and mistreated, tased, arrested and held at the station, the actions of the USPP officers who: (1) detained him; (2) oversaw and/or committed the actions including unlawful detention, physical assault and battery, and tasering; were known to those USPP officers' supervisors and colleagues. Yet, upon information and belief, these supervisors and colleagues took no action to stop, correct or amend the unlawful and harmful action of their colleagues.

By intentionally, unlawfully, and in bad faith detaining and tasering him under these unlawful and harmful conditions, and by unlawfully and intentionally arresting and imprisoning him, the officers and agents of the U.S. Park Service described above committed the following common law torts:

1. Negligent hiring
2. Negligent retention
3. Negligent training
4. Intentional infliction of emotional distress

The actions of the officers and agents described above also committed the following torts under District of Columbia law:

1. Abuse
2. Neglect
3. Assault and Battery
4. False Arrest
5. False Imprisonment

# Exhibit C



## United States Department of the Interior

OFFICE OF THE SOLICITOR
Division of General Law, Torts Practice Branch
505 Marquette Ave N.E. Suite 1800
Albuquerque, NM 87102

September 12, 2019

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Patricia Cresta-Savage, Esq.
Law Office of Pat Cresta-Savage, LLC
2138 Priest Bridge Court Suite 4
Crofton, MD 21114

      Re:    Administrative Claim of Douglas Hasner – No. TPB-19-0283

Dear Ms. Cresta-Savage:

By Standard Form 95, dated January 30, 2019, you filed a Federal tort claim for Douglas Hasner against the Department of the Interior in a total claimed amount of damages of $1,000,000.00. This claim was referred to the Office of the Solicitor for processing.

The claim submitted has been referred to me for determination under the Federal Tort Claims Act, codified as amended primarily at 28 U.S.C. §§ 2671-80 (2006), which authorizes the administrative settlement of claims for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

According to the submitted Standard Form 95 and attachments, this claim arises from the arrest of Mr. Hasner by National Park Service Law Enforcement on April 9, 2018 in Washington, D.C. After reviewing the claim and the law, I hereby deny this claim.

If you are dissatisfied with this determination, you may submit to this office a written request for reconsideration within six months after the date of mailing of this letter, or you may, within that same period of time, file suit in an appropriate United States District Court. The decision announced in this letter is final unless reconsideration is requested or suit is filed within the six-month period.

Should you have any questions regarding this decision, please contact Jared M. Slade at (505) 248-5615, the attorney primarily responsible for this claim.

Sincerely,

Laura Brown
Deputy Associate Solicitor
Division of General Law

By:

*Patricia J. Reedy*

Patricia J. Reedy
Assistant Solicitor
Torts Practice Branch
Department of the Interior

cc: James Richardson, District Commander, National Park Service